# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA CORY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-568-G |
| | ) |
| OVINTIV INC. et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Melissa Cory brings this diversity action against Defendants Ovintiv Inc. and Ovintiv USA, Inc., seeking relief on claims under Oklahoma law. Defendants have jointly filed a Motion to Dismiss (Doc. No. 45) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded (Doc. No. 46), Defendants have replied (Doc. No. 47), and the Motion is now at issue.[1]

### I.   *Plaintiff's Allegations*

Plaintiff and Defendant Ovintiv USA, Inc. ("Ovintiv USA") are successors in interest to an oil and gas lease (the "Lease") burdening a 160-acre tract of Section 36, Township 15 North, Range 9 West in Kingfisher County, Oklahoma (the "Leased Property"). *See* Am. Compl. (Doc. No. 44) ¶¶ 11-13, 15; *see also* Defs.' Mot. at 5-6 (noting that Defendant Ovintiv Inc. is not a party to the Lease). The Lease was executed on March 14, 1977, between Plaintiff's predecessors, as lessors, and Defendant Ovintiv USA's

---

[1] Following this briefing, Plaintiff also filed a "Reply," Doc. No. 16. This supplemental brief was unauthorized and has not been considered by the Court. *See* LCvR 7.1(i).

predecessor, as lessee. *See* Am. Compl. ¶ 12; *id.* Ex. 1, Lease (Doc. No. 44-1).[2] The Lease provides for an initial term of three years, to continue thereafter so long as oil or gas "is or can be produced from [the Leased Property] or from land within which [the Leased Property] is pooled." Lease ¶ 2.

The Lease includes a voluntary "pooling" provision, which states in part:

> Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the conservation of oil, gas or other minerals in and under and that may be produced from said premises or in order to obtain a larger production allowable from any governmental agency having control over such matters, *such pooling . . . to be into a unit or units not exceeding 160 acres each in the event of an oil well*, or into a unit or units not exceeding 640 acres each in the event of a gas well.

*Id.* ¶ 6 (emphasis added).

On February 2, 1980, the Oklahoma Corporation Commission ("OCC") entered its Order No. 164538 ("Order No. 164538"), providing among other things "that Section 36, Township 15 North, Range 9 West, Kingfisher County, Oklahoma, is established as one 640-acre drilling and spacing unit for the production of gas and gas condensate from the Tonkawa, Mississippi Solid, and Hunton separate common sources of supply." Order No. 164538, at 3, ¶ 2, Defs.' Mot. Ex. 2 (Doc. No. 45-2).[3] The OCC found that creation of the

---

[2] For ease of reference, the predecessors/contracting parties are referred to herein as "Plaintiff" and "Defendants."

[3] The Court may consider Order No. 164538 in deciding Defendants' Motion to Dismiss as this Order is referenced in the Amended Complaint and is central to Plaintiff's claims. In addition, the Court may take judicial notice of OCC orders and proceedings. *See Sinclair Oil & Gas Co. v. Bishop*, 441 P.2d 436, 441-42 (Okla. 1967).

Unit was "[i]n the interest of securing the greatest ultimate recovery from the reservoir, the prevention of waste," "and the protection of correlative rights." *Id.* at 3, ¶ 11.

On April 27, 2017, Defendants filed an application with the OCC, in Cause CD No. 201702631-T, to establish a 640-acre drilling and spacing unit so that it could drill oil from the Mississippian, Woodford, and Hunton common sources of supply. Am. Compl. ¶ 31. Defendants later requested to dismiss the application, representing that it no longer intended to drill the well. *Id.* ¶ 35.

On May 18, 2017, Defendants filed an application for increased density in Cause CD No. 201703285-T so that they could drill an additional well on the 640-acre gas unit established by OCC Order No. 164538. *Id.* ¶ 38. In this application, Defendants erroneously stated that Order No. 164538 had "established a 640-acre drilling and spacing unit for the production of oil and gas or gas and gas condensate from the Mississippian common source of supply" underlying Section 36-15N-9W. *Id.* ¶ 39 (emphasis omitted).

On or about July 6, 2017, the OCC issued Order No. 665651 ("Order No. 665651") granting Defendants' increased-density application. *Id.* ¶ 42. Order No. 665651 authorized the drilling of an additional well "on a new 640-acre horizontal drilling and spacing unit for the Mississippian common source of supply for the production of oil." *Id.* (emphasis omitted); *see also id.* ¶ 46 ("Order No. 665651 created a new horizontal unit."). Shortly thereafter, Defendants completed the Katie 1509 1H-36 (the "Katie 1509"), an oil well, in Section 36-15N-9W "on a 640-acre horizontal drilling and spacing unit that included Plaintiff's lands." *Id.* ¶ 45.

On November 1, 2018, the OCC issued an order *nunc pro tunc* finding that Order No. 665651 erroneously referenced the Mississippian common source of supply rather than the Mississippi Solid common source of supply. *Id.* ¶ 46.

In 2019, Plaintiff filed suit, seeking to quiet title to the Leased Property and asserting various claims against Defendants. *See Cory v. Newfield Expl. Mid-Con, Inc.*, No. CIV-19-221-G (W.D. Okla.). After voluntarily dismissing that suit, Plaintiff filed this one, bringing claims to quiet title and for breach of contract. *See* Am. Compl. ¶¶ 63-113.[4]

## II. Standard of Decision

Defendants seek dismissal of Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192.

---

[4] Plaintiff was required to pay Defendants certain costs of the previously dismissed *Newfield* action pursuant to Federal Rule of Civil Procedure 41(d). *See* Order of Oct. 13, 2023 (Doc. No. 37) (staying the instant case until Plaintiff complied).

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (footnote and citation omitted).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.   Discussion

   A.   *Plaintiff's Claim for Breach of Contract*

To establish a breach of contract under Oklahoma law, Plaintiff must show "(1) the formation of a contract, (2) breach of the contract, and (3) damages as a result of that breach."  *Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018).  Plaintiff alleges that Defendants "breached the Lease and violated Oklahoma statutory law made a part of the Lease" "by combining the [Leased Property] with other lands into a 640-acre horizontal unit for the production of oil and drill[ing] the Katie [Well], a horizontal oil well."  Am. Compl. ¶ 108.  More specifically, Plaintiff claims that the drilling of the Katie Well violated the 160-acre spacing limitation contained in the Lease's voluntary pooling clause, which restricts the lessee's "right and power to pool or combine [the Leased Property]" "into a unit or units not exceeding 160 acres each in the event of an oil well."  Lease ¶ 6; *see* Am. Compl. ¶¶ 75-76; *see also id.* ¶ 106 ("Although the OCC had the statutory authority to issue Order No. 665651 . . . , [Defendants] had a separate and distinct duty to comply with the terms of the Lease and obtain a new lease . . . authorizing the combining of the Subject Property into a larger 640-acre horizontal unit for the production of oil.").

Defendants argue that Plaintiff has not plausibly alleged a breach of the Lease, because the 160-acre pooling restriction was "superseded" by the OCC's orders and creation of new units pursuant to the OCC's "statutorily granted powers to prevent waste and protect correlative rights." Defs.' Mot. at 2-3, 7-14. The Court agrees for the reasons set forth below.

The Court previously considered this precise issue in a nearly identical lawsuit brought by Plaintiff: *Cory v. Cimarex Energy Co.*, No. CIV-20-706-G (W.D. Okla.) (the "First Lawsuit"). In the First Lawsuit, as here, Plaintiff as lessor claimed that a lessee had violated the parties' lease by drilling a horizontal oil well in accordance with the OCC's orders but not with the lease's 160-acre pooling restriction. *See Cory*, 2021 WL 1108596, at *1 (W.D. Okla. Mar. 23, 2021). The Court's characterization of the parties' positions and conclusion as to the lack of viability of a breach-of-contract claim are equally applicable here:

> [T]he impact, if any, of [OCC Order No. 665651] on [Defendants'] duty to comply with the Lease's 160-acre pooling restriction hinges on the intent of the original contracting parties. *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1015 (10th Cir. 2018) (explaining that, under Oklahoma law, the "paramount objective" of contract interpretation is "to ascertain and give effect to the intention of the parties"). According to [Defendants], it was the intent of the original parties that the pooling restrictions would yield to any conflicting unitization order issued by the OCC. To support this position, [Defendants] rel[y] primarily on *Hladik v. Lee*, 541 P.2d 196 (Okla. 1975), and *Oklahoma Natural Gas Company v. Long*, 406 P.2d 499 (Okla. 1965).
>
> In *Hladik*, an oil and gas lessee pooled ten separately owned tracts of land to create a 480-acre "declared" unit. *Hladik*, 541 P.2d at 197. The OCC subsequently issued a spacing order creating a 160-acre "compulsory" unit within the acreage comprising the declared unit. *Id.* The issue was how to distribute royalties derived from gas production on the compulsory unit. *See id.* The Oklahoma Supreme Court held that the compulsory unit superseded

6

the declared unit, and royalties should be paid accordingly—that is, only those lessors whose acreage was included in the compulsory unit were entitled to share in production. *See id.* at 198-99. The court reasoned that oil and gas leases are negotiated against the backdrop of the OCC's regulatory authority, of which the parties are presumably aware; thus, in the absence of an express agreement providing otherwise, it must be assumed that the parties intended that a valid exercise of such authority would supersede any and all conflicting lease provisions. *See id.* The court found further support for its holding in the language of the lease itself, which reflected the lessors' intent that its acreage be pooled when necessary to promote conservation—an objective that aligned with that of the OCC in issuing its order creating the compulsory unit. *See id.*

At issue in *Long* was an oil and gas lease requiring the lessee to commence the drilling of a well on the leased property within one year's time or otherwise pay delay rentals to the lessor. *See Long*, 406 P.2d at 501. Subsequent to the lease's execution, the OCC issued a spacing order creating a 640-acre unit that embraced the leased property, and a well was drilled pursuant thereto. *Id.* In an action to cancel the lease and quiet title to the leased property, the lessor argued that the lease had expired on its own terms once the lessee ceased paying delay rentals because the lessee had failed to drill a well on the leased property as promised. *Id.* The lessor argued that the well drilled in the unit did not hold the lease because it was not drilled on his specific property. *Id.* at 501-02. The court rejected this argument, reasoning that "[w]hen this lease was entered into the parties knew of the authority of the Oklahoma Corporation Commission to enact well-spacing regulations in furtherance of conserving oil and gas, and they contracted subject thereto." *Id.* at 503. The court held that the spacing order superseded the conflicting lease provision and, therefore, production from the well operated to perpetuate the lease. *See id.* at 501.

*Id.* at *2 (footnotes and citations omitted).[5]

*Hladik* and *Long* foreclose Plaintiff's breach-of-contract claim. "These decisions teach that the OCC's regulatory authority, e.g., to space wells for the conservation of oil, gas, and other natural resources, is incorporated into private oil and gas leases by operation

---

[5] *Long* has been superseded on other grounds as recognized in *Hall v. Galmor*, 427 P.3d 1052, 1071 & n.106 (Okla. 2018).

of law." *Id.* at *3 (alteration and internal quotation marks omitted). "It is therefore the expectation and intention of the contracting parties that a valid exercise of the OCC's regulatory authority will supersede conflicting lease provisions"—particularly when applied to a pooling clause that identifies, as its primary objective, "the conservation of oil, gas or other minerals." *Id.*; Lease ¶ 6; *see Hladik*, 541 P.2d at 198. As in the First Lawsuit, the Court rejects Plaintiff's contentions that *Hladik* is inapplicable or that the decision otherwise supports the enforceability of the pooling provision. *See Cory*, 2021 WL 1108596, at *3; Pl.'s Resp. at 25.

Finally, to the extent Plaintiff relies upon Defendants' alleged misdeeds affecting the fairness of proceedings before the OCC as a basis for Defendants' liability, *see* Am. Compl. ¶¶ 1, 39, the Court notes again that it "ha[s] no jurisdiction to inquire into the facts determined in the OCC proceedings" and "may not permit a collateral attack upon the orders, rules and regulations of the OCC." *Newfield*, 2020 WL 981718, at *2-3 (W.D. Okla. Feb. 28, 2020) (internal quotation marks omitted).[6]

### B. Plaintiff's Quiet Title Claim

Under Oklahoma law, the purpose of a quiet title action "is to determine who is the real owner of the property and to put to rest all adverse claims." *Home Dev. Co. v. Hankins*, 159 P.2d 1013, 1013 (Okla. 1945). Plaintiff's claim to quiet title alleges that because four gas wells drilled by Defendants on the Leased Property (the "Alig Wells") have now been plugged and abandoned, and the improperly drilled Katie Well fails to perpetuate the terms

---

[6] In light of the clearly applicable authorities cited herein, the Court need not address the parties' alternative arguments regarding dismissal of this claim.

of the Lease, the Lease has expired and Defendants have no right, title, or interest in the Leased Property. *See* Am. Compl. ¶¶ 63-73.

As outlined above, Plaintiff has not plausibly alleged that the drilling of the Katie Well was done in violation of the Lease. And Plaintiff does not establish that the Katie Well is otherwise failing to perpetuate the Lease. *Cf. id.* ¶ 112 (alleging that the Katie Well "is continuously being operated"). Plaintiff therefore has not stated a claim to quiet title upon which relief can be granted. *See* Lease ¶ 2 ("This lease shall remain in force . . . as long . . . as . . . oil, gas, casinghead gasoline, . . . or any of the products covered by this lease is or can be produced from said land, or from land with which said land is pooled, or operations are being continued as hereinafter provided.").

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss (Doc. No. 45) is GRANTED. Plaintiff's Amended Complaint (Doc. No. 44) is DISMISSED with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[7]

A separate judgment shall be entered.

IT IS SO ORDERED this 22nd day of August, 2024.

CHARLES B. GOODWIN
United States District Judge

---

[7] "[A] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (internal quotation marks omitted).

9